1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

9

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11

MARTIN BASUA,                                    No. C 04-2846 MMC (PR)

12

   Petitioner,                        **AMENDED**
                **ORDER DENYING PETITION FOR**

13

 v.                                                    **WRIT OF HABEAS CORPUS**

14

J. SOLIS, Warden,

15

   Respondent.
                 /

16
17

   On July 14, 2004, petitioner Martin Basua, a California prisoner proceeding pro se,

18

filed the above-titled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

19

challenging the decision by the Board of Prison Terms ("Board") denying him parole in

20

2003.  On September 27, 2004, the Court ordered respondent Warden Solis to show cause

21

why the petition should not be granted based on petitioner's cognizable claims for relief.

22

Respondent filed an answer accompanied by a memorandum and exhibits, and petitioner

23

filed a traverse.  After being granted leave to do so by the Court, respondent filed a

24

supplemental answer, and petitioner filed a supplemental traverse.  Having read and

25

considered the parties' respective submissions, the Court rules as follows.[1]

26
27
28

_____

   [1] The sole amendment to the order is to correct a typographical error at page 1, line 17
as to the name of the petitioner.

**United States District Court**
For the Northern District of California

**BACKGROUND**

On October 19, 1992, the Superior Court of California, County of Los Angeles, ("Superior Court") sentenced petitioner to a term of seven years to life in prison upon acceptance of petitioner's plea of guilty to the charge of kidnaping for robbery. (See Answer Ex. 1.) Petitioner also pled guilty to charges of grand theft of a vehicle, three counts of first degree residential robbery, six counts of second degree robbery, and multiple enhancements for the use of a firearm. (See Answer Ex. 2.) The sentences on the robbery charges were ordered to run concurrently with the indeterminate life sentence on the kidnapping charge, and the sentence on the grand theft charge was stayed. (See id.)

The events giving rise to the charges were summarized in the probation report prepared for the Superior Court for sentencing purposes. (See Answer Ex. 6 at 3-6.) The Board relied on the summary at petitioner's 2003 parole suitability hearing to establish the facts of petitioner's commitment offenses, (see Answer Ex. 3 at 10-11), and petitioner raised no objection thereto. The Court includes the summary here:

> On 10/30/91, at about 5:45 p.m., Basua and an unidentified suspect robbed a woman and her two sons in front of their subterranean garage at 849 Gramercy Place. The victims said that both Basua and the unidentified suspect were armed with handguns and robbed them of their personal property and money. They ordered the victims into the garage and they complied, as the victims walked into the garage they heard the robbers yelling "Give me your money." The victims suspected they were robbing someone else, and headed to the manager's apartment when the attendant said she witnessed the robbery and had called the police. Another victim identified as Mr. Cho stated as soon as he parked, Basua and the unknown suspect ran up to the driver's side of the vehicle, opened the door, and demanded money. Mr. Cho said he didn't have any money as they pointed a gun at him. They searched his pockets, took his watch and demanded his car, and Cho refused. The suspects all of a sudden ran from the location when they realized that the police were watching them. After a brief foot pursuit, the suspects were taken into custody. Los Angeles Police Department officers then pulled out every subterranean garage armed robbery they had on file and conducted photo showings with the victims, as a result 11 counts of robbery were charged. Basua's sentence was reduced as a result of a plea bargain.

(See Answer Ex. 5 at 1.)

Prior to 2003, the Board had, on three occasions, found petitioner unsuitable for parole. (See Answer Ex. 4.) At issue in the instant petition is petitioner's fourth parole suitability hearing, in 2003, at which the Board again found petitioner unsuitable for parole.

1  (See id.)

2       On February 21, 2003, the Board determined petitioner was "not suitable for parole

3  and [ ] would pose an unreasonable risk of danger to society, if released from prison at this

4  time." (See Answer Ex. 3 at 67:18-19.)  The Board's first consideration was the nature of the

5  commitment offenses.  The Board found:

6       The string of robberies that [petitioner] was committed to prison for, were
        carried out in an especially cruel manner, a manner which demonstrates a
7       callous disregard for human suffering.  Some of [petitioner's] victims included
        women and children.  The motive for this crime was very trivial.  Basically, it
8       was greed.  [Petitioner] needed money to subsidize [his] drug habit, [his]
        addiction to cocaine.
9
10 (See id. at 67:24-68:6.)  The Board explained its conclusions were drawn from the facts of

11 the crime, wherein petitioner and his partner, both active gang members and both addicted to

12 cocaine, formulated a plan to subsidize their drug habit by robbing innocent people.  (See id.

13 at 68:8-13.)  In order to accomplish the robberies, they armed themselves with weapons --

14 sometimes BB guns, sometimes pellet guns, and sometimes real guns with real bullets.  (See

15 id. at 68:15-16.)  They went on a crime spree, terrorizing the Korea Town section of Los

16 Angeles.  (See id. at 16-19.)

17      The Board also noted petitioner's unstable social history, including his history of

18 involvement in the street gang lifestyle, substance abuse problems, escalating pattern of

19 criminal conduct, and previous contacts with the criminal justice system.  (See id. at 68:20-

20 69:3.)  The Board noted, as well, that the District Attorney opposed petitioner's release on

21 parole.  (See id. at 70:11-13.)

22      The Board further found petitioner had not sufficiently participated in self-help

23 programming.  (See id. at 69:8-11).  The Board relied upon a November 10, 1998,

24 Psychological Evaluation prepared by Steven J. Terrini, Ph.D., a prison staff psychologist,

25 which found that, relative to the average citizen in the community, petitioner had a violence

26 potential below average, but should petitioner begin to use crack cocaine again, his violence

27 potential would be considered much higher than average.  (See id. at 69:11-25.)

28 Acknowledging petitioner's enrollment in a substance abuse program since his last parole

1   consideration hearing, the Board concluded "this prisoner needs to continue his participation

2   in self-help programming . . . ."  (See id. at 70:16-17).

3          The Board acknowledged petitioner had taken steps towards establishing viable parole

4   plans for his return to Mexico (to which he would be deported upon his release), (see id. at

5   70:5-10), and lauded him for his exemplary, disciplinary-free record in prison, (see id. at

6   69:4-8, 70:20-23).  The Board further commended petitioner for completing vocational

7   programs and obtaining his high school equivalency degree.  (See id. at 70:23-71:2.)  The

8   Board told petitioner: "You're doing . . . all the things that need to be done to some day

9   convince a Panel that you're suitable for parole and we urge you to stay on that path."  (See

10  id. 71:3-6.)  The Board concluded, however, that those positive aspects of petitioner's

11  behavior "do not outweigh the factors of unsuitability."  (See id. at 71:6-8.)  The Board

12  denied petitioner parole for one year.

13         Petitioner filed a petition for a writ of a habeas corpus in the Superior Court,

14  challenging the Board's decision.  The Superior Court denied the petition on January 7, 2004,

15  finding there was some evidence to support the Board's decision.  (See Answer Ex. 9.)

16  Petitioner subsequently filed a petition for a writ of habeas corpus in the California Court of

17  Appeal, which denied the petition on March 4, 2004, finding the Board had not abused its

18  discretion by relying substantially on the nature of the commitment offense to deny parole.

19  (See Answer Ex. 8.)  Petitioner thereafter filed a petition for review in the California

20  Supreme Court, which petition was denied without comment on May 19, 2004.  (See Answer

21  Ex. 10.)  Petitioner next filed the instant petition, in which he claims the Board violated his

22  federal constitutional rights by denying him parole (1) without sufficient evidence to support

23  its decision that his release would pose an unreasonable risk to public safety; (2) in breach of

24  his plea agreement, by recharacterizing his offenses as more serious than those to which he

25  pled guilty and by considering the offenses for which he had received concurrent and stayed

26  sentences; and (3) by considering his individual suitability for parole, rather than setting a

27  uniform parole date based solely on his commitment offense.

28  //

4

**DISCUSSION**

**A.    Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a habeas petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." See 28 U.S.C. § 2254(d).  Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole.  Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

A decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."  See Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  An "unreasonable application" of federal law occurs "if the state court identifies the correct governing legal principle from the [Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  See id. at 75.  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous."  Id.  "The state court's application of clearly established law must be objectively unreasonable."  Id.  An "unreasonable determination of the facts" occurs where "an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record" or "that the state court's fact-finding process was adequate."  See Taylor v. Maddox, 366 F.3d 992, 1000 (2004).

In determining whether to grant a petition, a federal court must analyze the state court's "last reasoned decision."  Barker v. Fleming, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

1  Here, the "last reasoned decision" is the California Court of Appeal's order of March 4,

2  2004.  (See Answer Ex. 8.)

3  **B.      Mootness**

4        Respondent asserts the instant petition is moot because the 2003 parole denial at issue

5  has been superceded by a subsequent unsuitability decision in 2004.

6        The mootness doctrine derives from the requirement of Article III, §2, of the United

7  States Constitution that there exist a case or controversy through all stages of federal judicial

8  proceedings.  The effect of such requirement is that the party who has filed suit "must have

9  suffered, or be threatened with, an actual injury traceable to the defendant and likely to be

10  redressed by a favorable judicial decision."  Lewis v. Continental Bank Corp., 494 U.S. 472,

11  477 (1990).  "This case-or-controversy requirement subsists through all stages" of the federal

12  judicial proceedings. See id.  One exception to the mootness doctrine, however, is where a

13  claim is "capable of repetition yet evading review."  See Wiggins v. Rushen, 760 F.2d 1009,

14  1011 (9th Cir. 1985).  "A claim evades review if the underlying action is almost certain to

15  run its course before either [the Ninth Circuit] or the Supreme Court can give the case full

16  consideration.'"  Hubbart v. Knapp, 379 F.3d 773, 778 (9th Cir. 2004), cert. denied, 543 U.S.

17  1071 (2005) (citation omitted).  In Hubbart, the Ninth Circuit found a habeas petition

18  challenging a two-year commitment under California's Sexually Violent Predator's Act

19  evaded review because the duration of the commitment was too short to allow the

20  commitment to be fully litigated prior to its expiration.  Id. at 777.

21        Under the reasoning of Hubbart, petitioner's claim that his parole suitability hearing

22  was in violation of due process is capable of repetition yet evading review.  See Jones v.

23  Solis, 2006 WL 927699, at *3 (N.D. Cal. Apr. 10, 2006); Hudson v. Kane, 2005 WL

24  2035590, at *4 (N.D. Cal. Aug. 23, 2005).  His claim is "capable of repetition" because it is

25  reasonable to expect he will be subject to parole suitability hearings in the future.  Indeed, he

26  already has had at least one subsequent parole suitability hearing, at which he again was

27  found unsuitable for parole.  (See Answer at 21.)  Also, petitioner's claim "evades review"

28  because, to date, all of his parole denials have been for one year; the time between parole

6

1  suitability hearings is not adequate for full litigation of the claim before it expires due to the

2  occurrence of the next parole suitability hearing.

3       Because petitioner's claim is capable of repetition yet evading review, the Court finds

4  the instant petition is not moot.

5  **C.**     **Exhaustion**

6       Respondent argues petitioner's third claim, that the Board violated due process by

7  considering petitioner's individual suitability for parole, rather than setting a uniform parole

8  date based solely on the commitment offense, is unexhausted because petitioner raised it for

9  the first time in his petition for review to the California Supreme Court.

10       Prisoners in state custody who wish to challenge collaterally in federal habeas

11  proceedings either the fact or length of their confinement are first required to exhaust state

12  judicial remedies, either on direct appeal or through collateral proceedings, by presenting the

13  highest state court available with a fair opportunity to rule on the merits of each and every

14  claim they seek to raise in federal court. <u>See</u> 28 U.S.C. § 2254(b)-(c). The exhaustion-of-

15  state-remedies doctrine reflects a policy of federal-state comity to give the state "the initial

16  'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'"

17  <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971) (quoting <u>Wilwording v. Swenson</u>, 404 U.S. 249,

18  250 (1971)). The exhaustion requirement is satisfied only if the federal claim has been

19  "fairly presented" to the state courts. <u>See id.</u>; <u>Peterson v. Lampert</u>, 319 F.3d 1153, 1155-56

20  (9th Cir. 2003) (en banc). A federal district court must dismiss a federal habeas petition

21  containing any claim as to which state remedies have not been exhausted. <u>See</u> <u>Rhines v.</u>

22  <u>Webber</u>, 544 U.S. 269, 273 (2005).

23       As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting

24  the federal claim to the appropriate state courts in the manner required by the state courts,

25  thereby affording the state courts a meaningful opportunity to consider allegations of legal

26  error. <u>Casey v. Moore</u>, 386 F.3d 896, 915-16 (9th Cir. 2004), <u>cert. denied</u>, 545 U.S. 1146

27  (2005). In <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989), the United States Supreme Court

28  held that a claim was not fairly presented where it was raised for the first time on

7

discretionary review to the state's highest court and denied without comment.  In so holding, the Supreme Court stated:  "[W]here the [federal] claim has been presented for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor, . . . [r]aising the claim in such a fashion does not . . . constitute fair presentation."  <u>Id.</u>  The Ninth Circuit has interpreted <u>Castille</u> to stand for the proposition that a petitioner does not fairly present a federal claim to the state courts if he seeks review of the claim for the first time on discretionary appeal.  <u>See</u> <u>Casey</u>, 386 F.3d at 917-18 (holding petitioner did not exhaust federal claims where they were raised for first and only time in discretionary petition for review to Washington State Supreme Court).

The procedural posture of petitioner's third claim in the instant petition is indistinguishable from that of the petitioner's claims in <u>Casey</u>.  The language of Rule 8.500 of the California Rules of Court makes clear that a petition for review to the California Supreme Court is a discretionary appeal:  "As a policy matter, on petition for review the Supreme Court normally will not consider an issue that the petitioner failed to timely raise in the Court of Appeal."  <u>See</u> Cal. R. Ct. 8.500(c)(1).  Here, petitioner raised his third claim only in his petition for review to the California Supreme Court, and that court denied the petition without comment.  Accordingly, this Court finds petitioner did not fairly present his third claim for review to the state courts.

Although the claim is unexhausted, respondent urges the Court to deny the petition on the merits under 28 U.S.C. § 2254(b)(2), which provides:  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  A court may deny a petition containing an unexhausted claim on the merits "when it is perfectly clear that the applicant does not raise even a colorable federal claim."  <u>Cassett v. Stewart</u>, 406 F.3d 614, 623-24 (9th Cir. 2005).  For the reasons discussed below, the Court finds petitioner's third claim does not raise a colorable federal claim.  Accordingly, the Court will not dismiss the petition for failure to exhaust.

//

1 **D.     Subject Matter Jurisdiction**

2      Respondent asserts the instant petition should be dismissed for lack of subject matter

3 jurisdiction, because petitioner has no constitutionally protected liberty interest in parole.

4      While there is "no constitutional or inherent right of a convicted person to be

5 conditionally released before the expiration of a valid sentence," <u>Greenholtz v. Inmates of</u>

6 <u>Nebraska Penal & Corr. Complex</u>, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if

7 it uses mandatory language, may create a presumption that parole release will be granted

8 when, or unless, certain designated findings are made, and thereby give rise to a

9 constitutionally protected liberty interest.  <u>See</u> <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 376-

10 78 (1987) (finding Montana parole statute creates due process liberty interest in release on

11 parole); <u>Greenholtz</u>, 442 U.S. at 11-12 (finding Nebraska parole statute creates due process

12 liberty interest in release on parole).  In such a case, a prisoner gains a legitimate expectation

13 in parole that cannot be denied without adequate procedural due process protections.  <u>See</u>

14 <u>Allen</u>, 482 U.S. at 373-81; <u>Greenholtz</u>, 442 U.S. at 11-16.  In <u>McQuillion v. Duncan</u>, 306

15 F.3d 895 (9th Cir. 2002), the Ninth Circuit held that, under the clearly established framework

16 of <u>Greenholtz</u> and <u>Allen</u>, "California's parole scheme gives rise to a cognizable liberty

17 interest in release on parole."  <u>See id.</u> at 902.

18      Relying on the Supreme Court's decision in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995),

19 respondent argues the Ninth Circuit improperly applied <u>Greenholtz</u> and <u>Allen</u> to find a

20 protected liberty interest in <u>McQuillion</u>.  Respondent's argument is without merit.  In <u>Sandin</u>,

21 the Supreme Court criticized the "mandatory language" methodology used in <u>Greenholtz</u> and

22 <u>Allen</u>, and held that, while states may under certain circumstances create liberty interests that

23 are protected by the Due Process Clause, "these interests will be generally limited to freedom

24 from restraint which . . . imposes atypical and significant hardship on the inmate in relation to

25 the ordinary incidents of prison life."  515 U.S. at 484.  In <u>McQuillion</u>, the Ninth Circuit

26 squarely addressed, and rejected, the contention that <u>Sandin</u> applies to parole regulations.

27 <u>See</u> <u>McQuillion</u>, 306 F.3d at 902-04.  In particular, the Ninth Circuit held:  "It is clear from

28 the [Supreme] Court's framing of the problem in <u>Sandin</u> . . . that <u>Sandin</u>'s holding was

9

1    limited to internal prison disciplinary regulations."  Id. at 904; see also Sass v. California Bd.

2    of Prison Terms, 461 F.3d 1123, 1127 n.3 (9th Cir. 2006) ("Despite the government's

3    argument that [Sandin] eliminated the 'mandatory language' approach of Greenholtz and

4    Allen, the Supreme Court did not so hold and this court has consistently rejected this

5    argument.").

6         Respondent further argues the California Supreme Court's decision in In re

7    Dannenberg, 34 Cal. 4th 1061 (2005), established that California's parole regulations do not

8    create a protected liberty interest.  The Ninth Circuit rejected this argument in Sass, finding

9    Dannenberg addressed only "the narrow question whether the Board must engage in a

10   comparative proportionality analysis in setting parole dates before determining an inmate's

11   individual suitability for parole."  461 F.3d at 1128.  Consequently, the Ninth Circuit

12   concluded, "Dannenberg does not explicitly or implicitly hold that there is no constitutionally

13   protected liberty interest in parole," id., and "California inmates continue to have a liberty

14   interest in parole after [Dannenberg],"id. at 1125.

15        Accordingly, petitioner was entitled to the protections of due process at his parole

16   suitability hearing, and the Court has subject matter jurisdiction over the petition.

17   **E.    Petitioner's Claims**

18        **1.    Denial of Due Process**

19        Petitioner contends the Board violated his right to due process by denying him parole,

20   because the Board's decision was not supported by some evidence.

21        According to "clearly-established" federal law, a parole board's decision must be

22   supported by "some evidence" to satisfy due process.  See id. at 1128-29.  "[The] some

23   evidence standard is minimal, and assures that 'the record is not so devoid of evidence that

24   the findings of the disciplinary board were without support or otherwise arbitrary.'"  Id. at

25   1129 (quoting Superintendent v. Hill, 472 U.S. 445, 457 (1985)).  "To determine whether the

26   some evidence standard is met 'does not require examination of the entire record,

27   independent assessment of the credibility of witnesses, or weighing of the evidence.'"  Id. at

28   1128 (quoting Hill, 472 U.S. at 455-56.)  "Instead, the relevant question is whether there is

10

1  any evidence in the record that could support the conclusion reached'" by the Board.  See id.

2  (quoting Hill, 472 U.S. at 455-56.)

3       When assessing whether a state parole board's suitability determination was supported

4  by "some evidence," the Court's analysis is framed by the statutes and regulations governing

5  parole suitability determinations in the relevant state.  Irons v. Carey, --- F.3d ---, 2007 WL

6  2027359, at *3 (9th Cir. July 13, 2007).  In California, the criteria for determining whether a

7  life prisoner who has not been convicted of murder, such as petitioner, is suitable for parole

8  are set forth at title 15, § 2280, et seq., of the California Code of Regulations.  The opening

9  paragraph of § 2281(a) states: "Regardless of the length of time served, a life prisoner shall

10  be found unsuitable for and denied parole if in the judgment of the panel the prisoner will

11  pose an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit.

12  15, § 2281(a).  Circumstances "tending to indicate unsuitability" for parole include whether

13  "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner."

14  Id. § 2281(c).  This factor includes consideration of the number of victims; whether "[t]he

15  offense was carried out in a dispassionate and calculated manner"; whether the victim was

16  "abused, defiled or mutilated during or after the offense"; whether "[t]he offense was carried

17  out in a manner which demonstrates an exceptionally callous disregard for human suffering";

18  and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the

19  offense."  Id.  Other circumstances tending to show unsuitability for parole are a previous

20  record of violence, an unstable social history, previous sadistic sexual offenses, a history of

21  severe mental health problems related to the offense, and serious misconduct in prison or jail.

22  See id.

23       Circumstances tending to support a finding of suitability for parole include: no

24  juvenile record; a stable social history; signs of remorse; the crime was committed as a result

25  of significant stress in the prisoner's life; a lack of criminal history; a reduced possibility of

26  recidivism due to the prisoner's present age; the prisoner has made realistic plans for release

27  or has developed marketable skills that can be put to use upon release; and the prisoner's

28  institutional activities indicate an enhanced ability to function within the law upon release.

1  See id. § 2281(d).

2      The Board's 2003 denial of parole was based in part on findings petitioner posed an

3  unreasonable risk of danger to society, see id. § 2281(a), because "the string of robberies that

4  [petitioner was] committed to prison for, were carried out in an especially cruel manner, a

5  manner which demonstrates a callous disregard for human suffering." (See Answer Ex. 3 at

6  67:24-68:2.) Based on evidence petitioner and his crime partner, both gang members, robbed

7  multiple individuals at gunpoint to support their cocaine addiction, and that petitioner had not

8  considered the effect of his actions on the victims when he committed the robberies, the

9  Board had "some evidence" to support these findings. (See id. at 13:24-18:7.) Further,

10 because petitioner conceded his sole motivation for committing multiple armed robberies was

11 to obtain money to subsidize his drug habit, (see id. at 15:23-16:26), the Board had "some

12 evidence" to support its finding that the motive for the crime was very trivial in relation to

13 the offense. (See id. at 68:3-4.)

14     The Board also considered petitioner's previous record of violence, see Cal. Code

15 Regs. tit. 15, § 2281(c), and based its denial of parole in part on findings that petitioner had

16 an unstable social history and prior criminal record. (See Answer Ex. 3 at 68:20-69:2.)

17 Based on evidence of petitioner's history as a gang member, his use and abuse of drugs (in

18 particular, cocaine), and an escalating pattern of criminal conduct that included a conviction

19 for receiving stolen property and numerous arrests for property-related crimes,  there was

20 "some evidence" to support the Board's findings. (See id. at 22:1-24:23.)

21     The Board further determined petitioner needed to participate in additional self-help

22 programs before he could be found suitable for parole. (See id. at 69:8-11, 70:14-20.) Of

23 particular concern to the Board was petitioner's continued need for insight into his drug

24 addiction, and his ability to avoid a relapse upon his release. (See id. at 69:18-70:20.) The

25 Board relied upon a psychological evaluation by prison psychologist Steven Terrini, which,

26 the Board conceded, estimated petitioner's violence potential to be below average relative to

27 the average citizen in the community. The Board expressed great concern, however, about

28 the report's conclusion that, if petitioner were to begin using crack cocaine again upon his

release, his violence potential would be considered much higher than average.  (See id. at
69:11-25.)  Based on evidence petitioner believed his drug use was "behind" him now, (see
id. at 46:1-11), he had not sought out self-help programs he could attend in Mexico upon his
release, (see id. at 37:8-38:12), and he had stopped going to self-help programs in prison until
the Board, at his 2002 parole suitability hearing, directed him to start attending again, (see id.
at 43:9-44:10), there was "some evidence" to support the Board's finding that petitioner's
drug addiction still posed a barrier to parole.

        Petitioner contends the Board's continued reliance on his prior conduct and the nature
of the commitment offense violates due process.  The Ninth Circuit, however, has held that a
denial of parole based on an unchanging factor, such as the gravity of the offense, may
constitute "some evidence" to justify a denial of parole.  See Irons, 2007 WL 2027359, at *5
(holding Board's sole reliance on commitment offense in denying parole comported with due
process); Sass, 461 F.3d at 1129 (holding Board's reliance "on the gravity of [petitioner's]
convicted offenses in combination with his prior offenses . . . amount[ed] to some evidence
to support the Board's determination"); Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003)
("[T]he parole board's sole supportable reliance on the gravity of the offense and conduct
prior to imprisonment to justify denial of parole can be initially justified as fulfilling the
requirements set forth by state law.")  Although the Ninth Circuit, in Biggs, stated that "[a]
continued reliance in the future on an unchanging factor . . . runs contrary to the
rehabilitative goals espoused by the prison system and could result in a due process
violation," see Biggs, 334 F.3d at 917, this exception has never been applied by the Ninth
Circuit.

        Lastly, other circumstances presented in the instant action are not materially
distinguishable from those found not to warrant the granting of a habeas petition in Irons,
Sass, and Biggs.  Here, while in prison, petitioner has acquired a high school equivalency
degree, been free of disciplinary charges, received no counseling chronos in the last four
years, completed a mill and cabinet vocational program, continued in a computer vocational
program for the last three years, and participated in a substance abuse program for the last

three months.  (See Answer Ex. 3 at 40:5-45:5.)  Similarly, the petitioner in Irons was
"extremely industrious" in prison, maintained "average to exceptional job performance in
every position he ha[d] occupied," and "received certificates of completion in several
vocational training programs."  See Irons, 2007 WL 2027359, at *2.  Likewise, in Sass, the
petitioner displayed "exemplary conduct in prison," had "detailed plans" for his release,
received vocational training and certificates, and "had taken college classes, for which he
received all A's except for one B minus."  See Sass, 461 F.3d at 1136 n.16 (Reinhardt,
dissenting).  Lastly, the petitioner in Biggs was a "model inmate," received praise from his
supervisors for his "skills and efforts," received certification from the FAA in two aviation
programs, and earned an A.A. degree as well as a Bachelor's degree and Masters in Business
Administration.  See Biggs, 334 F.3d at 912.  The Ninth Circuit nonetheless found the
petitioners' accomplishments in Irons, Sass, and Biggs insufficient to require a grant of
parole.  See Irons, 2007 WL 2027359, at *5; Sass, 461 F.3d at 1129; Biggs, 334 F.3d at 916.

In sum, the Board had "some evidence" to support its decision to deny petitioner
parole in 2002.  See Sass, 461 F.3d at 1129.

## 2.   **Breach of Plea Agreement**

Petitioner next argues the Board's denial of parole breached the terms of his plea
agreement, because the Board characterized his commitment offense as more serious than the
charge to which he pled guilty, and considered the offenses underlying his concurrent and
stayed sentences when making its determination.  Specifically, petitioner contends that,
although he pled guilty to multiple counts, under the terms of the plea agreement he would be
punished only for the kidnap for robbery charge, and the punishments for all of the other
charges would be stayed or run concurrently.  (See Petition at 15-16.)  Petitioner maintains
he understood, at the time he entered his plea, that the plea agreement would contractually
estop the Board from either considering the other offenses or punishing him for them, in
return for his serving a prison term for the single offense of kidnap for robbery.  (See id. at
16.)

"[D]ue process rights conferred by the federal constitution allow [a defendant] to

14

enforce the terms of the plea agreement." <u>Brown v. Poole</u>, 337 F.3d 1155, 1159 (9th Cir. 2003).  Plea agreements are construed using the ordinary rules of contract interpretation.  <u>See id.</u> at 1159.  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled."  <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971); <u>see</u> <u>also</u> <u>Brown</u>, 337 F.3d at 1159 (holding prosecutor's promise petitioner would be released on parole after serving half of minimum sentence discipline-free was binding).

Assuming all of petitioner's allegations are true, he has failed to state a claim for relief because he has not shown that the terms of his plea agreement prohibited the Board from considering all of the charged offenses.  Notably, he has not presented any evidence of his plea agreement, and the abstracts of judgment do not support his purported subjective belief at the time he entered his plea.  (<u>See</u> Answer Exs. 1, 2.)  Further, at the time petitioner entered his plea, the Board was obligated, under California's parole regulations, to consider all of the offenses with which petitioner was charged when determining his parole suitability. <u>See</u> Cal. Code Regs. tit. 15, § 2281(b).  Finally, petitioner received the benefit of his plea agreement because he was ordered to serve a life sentence only on the charge of kidnap for robbery; determinate sentences for all of the robbery charges were ordered to run concurrently with the life sentence.  (<u>See</u> Answer Ex. 2.)  If the sentences on the other charges had been ordered to run consecutively to the life sentence, petitioner's total life term would have been greater, <u>see</u> Cal. Code Regs. tit. 15, § 2289, and his minimum eligible parole date would have been later, because he would have been required to serve the determinate sentences before he could begin serving his life sentence.  (<u>See</u> Answer App. C at 2.)

Based on this record, the Board's consideration of all of petitioner's charged offenses did not breach the plea agreement entered into between petitioner and the District Attorney's Office.

### 3.     <u>Failure to Set Uniform Parole Date</u>

Petitioner claims the Board violated his right to due process by considering his

1    individual suitability for parole, rather than setting a uniform parole date based solely on the

2    offense of kidnap for robbery.

3          California's parole regulations contain a matrix of suggested base terms prisoners with

4    life sentences should serve before they are released on parole.  See Cal. Code Regs. tit. 15,

5    § 2282.  The base term is to be set solely on the basis of the gravity of the "base offense,"

6    which is defined as "the most serious of all life offenses for which the prisoner has been

7    committed to prison."  See id. § 2282(a).  If, as in petitioner's case, the base offense is kidnap

8    for robbery, and the victim was unharmed or received only minor injury, the matrix base term

9    ranges from a low of eight, ten, or twelve years, to a high of eleven, thirteen, or fifteen years,

10   depending on the facts of the crime.  See id. § 2282(c).

11         In In re Dannenberg, 34 Cal. 4th at 1070-71, the California Supreme Court held that

12   an inmate's base term can be set only after he has been found suitable for parole, because the

13   statutory scheme places individual suitability for parole above a prisoner's expectancy in an

14   early setting of a fixed date designed to ensure term uniformity.  Specifically, the California

15   Supreme Court found:

16         While subdivision (a) of [California Penal Code] section 3041 states that
           indeterminate life (i.e., life-maximum) sentences should "normally" receive
17         "uniform" parole dates for similar crimes, subdivision (b) provides that this
           policy applies "*unless* [the Board] determines" that a release date cannot
18         presently be set because the particular offender's crime and/or criminal
           history raises "*public safety*" concerns requiring further indefinite incarceration.
19         (Italics added.)  Nothing in the statute states or suggests that the Board must
           evaluate the case under standards of term uniformity before exercising its
20         authority to deny a parole date on the grounds the particular offender's
           criminality presents a *continuing public danger*.

21
22   Id. at 1070 (emphasis, brackets, and parentheses in original).  Consequently, "the Board,

23   exercising its traditional broad discretion, may protect public safety in each discrete case by

     considering the dangerous implications of a life-maximum prisoner's crime individually."
24
     Id. at 1071.
25
           This Court is bound by a state court's interpretation of state law.  Bradshaw v. Richey,
26
     126 S. Ct. 602, 604 (2005); Hicks v. Feiock, 485 U.S. 624, 629 (1988).  Accordingly,
27
     petitioner's claim, that California's parole regulations required the Board to set a uniform
28

                                                  16

1    parole date for him, does not state a colorable federal claim for relief.

2        **4.    <u>Summary</u>**

3        For the reasons set forth above, the California Court of Appeal's decision rejecting

4    petitioner's first two claims and upholding the Board's 2003 denial of parole was not

5    "contrary to" or an "unreasonable application of" clearly established federal law, or "an

6    unreasonable determination of the facts in light of the evidence presented" in the state court

7    proceedings.  <u>See</u> 28 U.S.C. § 2254(d).  Further, petitioner's third claim, which was raised

8    only in a petition for review to the California Supreme Court and is unexhausted, fails to

9    state a colorable federal claim for relief.  Accordingly, the petition for a writ of a habeas

10   corpus will be denied.

11                                    **CONCLUSION**

12       For the reasons set forth above, the petition for a writ of a habeas corpus is hereby

13   DENIED.

14       The Clerk shall enter judgment and close the file.

15       **IT IS SO ORDERED.**

16   DATED: September 19, 2007

17                                    _____
                                      MAXINE M. CHESNEY
18                                    United States District Judge

17